Good morning. I'd like to begin first by talking about the evidence that the plaintiffs weren't prosecuted for the crimes that the officers charged them with. I don't think there's – Could you help me with something that's troubling me at the other end of the case for just a moment? I hope so, Your Honor. On the attorney's fees issue, we have some published authorities saying one consideration is what the other side spent on attorney's fees because litigation has something in common with tennis. If they hit the ball at you, you have to hit the ball back. Was there evidence put in in the attorney's fees dispute about how much the city spent? There wasn't, Your Honor. Or how many hours the city put in? There wasn't. Thank you. I don't think there's a serious dispute that it was error for Judge Johnson to admit the evidence that the plaintiffs weren't prosecuted. No one has been able to come up with a valid basis for admitting that evidence, not the plaintiffs themselves and not Judge Johnson in his order rejecting the Rule 58. But why was it prejudicial then? Why don't you go to that? Thank you. I will. It was prejudicial because that was the basis of the entire defense was that, yes, we did rough up these girls a little bit, but we did that because they were resisting arrest. One of them committed an assault on a police officer, and the other one interfered with a lawful arrest. Well, I think you have, you know, I mean, I would agree with you that I don't think that there's authority to support that that should have come in. But the thing is, there's basically like two questions, I think, that happen. There's one question that, and then by the second question, that's when appellants or defendants object. But they don't ask for a curative instruction or decide not to make more of it. You know, it looks like here that the jury was pretty diligent in going through and didn't, you know, didn't buy everything that the young women plaintiffs said. I mean, they were found partially at fault here in certain things, and it looks like the jury, you know, just didn't buy it. They didn't buy everything that you said. Obviously, they didn't buy everything that the other side said. So how do we, how can we say this is prejudicial? Well, by applying the standard that the Court enunciated in the Overy v. Johnson case, which says once erroneous evidence comes in, there's a presumption that it's prejudicial, and it's no longer my burden to prove that it's prejudicial. What is that? Overy v. Johnson. It says that there is a presumption of prejudice once evidence is erroneously admitted, and it is the burden of the party that's seeking to uphold the judgment to show that the evidence was not prejudicial. That sounds novel to me, and it sounds contrary to Rule 52. But assuming that it's so, I don't see, as Judge Callahan said, why the jury's careful sorting between the two different girls and the different conduct doesn't bear that burden if it exists. Because the jury might have found even more favorably to the defense or a complete defense verdict had it not had that erroneous evidence in front of it. That evidence put the lie to everything the defendants were trying to say because it showed that the DA who's supposed to be impartial and the DA who's supposed to represent the cause of justice and to represent the interests of the police officers decided this case isn't even worth prosecuting and dismissed it immediately. But if that were true, they probably, they're much more likely to have ruled against the officers on every claim, and they didn't. They really parsed it out between the false and the unlawful arrest, the use of excessive force, and the negligence toward each of the girls and by each of the sets of police officers. I mean, I just think a jury that's looking at that isn't saying, oops, you know, they weren't prosecuted, therefore the police were completely wrong. Well, I mean, also, how much money did that, how much money did the plaintiff or the appellee, how much did they ask for at the trial? They didn't ask for an amount that I recall. I know there were settlement discussions. I could go into those. Well, it just doesn't seem like, you know, you kind of look at this, too, and, you know, there's that staying, you know, don't make a federal case out of things. I mean, this, you know, the attorney's fees are way more than any of the recoveries are in this whole thing. So it's not, you know, the jury didn't go hog wild and say, you know, for, you know, seem to think that these girls a little bit caused the problem, but didn't deserve, you know, but that the officers over-amped on it, and it wasn't like they didn't give them a lot of money. I know. That's because they didn't think they had a very good case, and because it was a very close case and a difficult case to decide, and Judge Johnson said that. He said, I'm glad I don't have to decide this case. Counsel, you know, I find your argument on the merits totally unpersuasive. It seems to me that we review the evidentiary decision for abuse of discretion. It is at least arguable that the judge did not abuse his discretion by letting in the evidence because ordinarily a jury would infer from an arrest that somebody was guilty of a crime and could go either way, and it seems persuasive that there was no prejudice because both the sorting that the jury did and the damages were not out of hand. The only thing that looks kind of wild is the attorney's fees award, and on that what I was looking for was the evidence, gosh, we only spent $20,000 or $40,000 defending it, and they say it took $300,000 to prosecute it. They've got to be lying or else they don't know how to do this stuff, and that evidence isn't there because for some reason your side chose not to disclose what its own expenditures were on this case. I'm kind of bereft. And even on the attorney's fee issue, the judge didn't. He reduced the hours. He reduced the hourly rate, and he cut the cost by half on his own. The problem was he didn't consider what he was supposed to consider under circuit law, which is the lack of success. Well, they succeeded. He did say that they were definitely the prevailing party. I'm sorry, he said what? He did say that the plaintiff appellees were definitely the prevailing party. They were the prevailing party, but the lack of success comes into it when you look at what they started out with versus what they ended up with. They did succeed. They did succeed. They got against each plaintiff, got against each set of officers. They prevailed in one or more claims. So they did. If you don't look at what they started out with in the complaint, which you always know can be a hodgepodge of a number of different things, look at what it was narrowed down to, what went to trial, and who prevailed. Did your client win on any claim? Yes. Which one? Two out of the six claims our clients won on. On the false arrest claim of W.R., they won on that. On the negligence claim of W.R., they won on that, too, which is inconsistent with the finding that they used excessive force. Well, that's a different argument. Somehow we've jumped ahead to the attorney's fee award. Yes. Well, you asked me, Your Honor. So they won on four out of the six. Pardon me? So you're saying they won on four out of the six. That's correct. I don't really see why that helps you much. I mean, commonly a plaintiff will sue for, say, negligence, an intentional tort, breach of warranty, all kinds of different counts. But the point of it, and we have a published decision that says this, is to get a money award for some sort of harm. And the plaintiff doesn't really care which theory he gets it on. The important thing about the success is, is it merely nominal, as in Hensley, a $1 nominal damages award? And the answer is no. And then the question is proportionateness, which came up in Kentucky Fried Chicken, as I recall, versus McGinnis. And that argument strikes me as very apropos to this case, but I'm troubled because it wasn't made. Instead of showing disproportionateness, all that seems to be argued by your side is padding and inappropriate charges. And the district judge found that that was correct. In fact, some of the charges really bothered him. Like, what was it, four hours for watching a 90-minute movie for each of two lawyers or something like that? So he knocked it down. I don't really see where you've got a disproportionateness argument that was made to the district court. Point me to it if you do. There isn't one. That's not the argument. That's not the argument I'm making now. I should have made the argument. I'll have to go home and revise my brief for next time. But I didn't make it because, as far as I can see, the real point is they came in with these six claims, and they won on four of them. They had very little money, considering what kind of a case it was. But the girls had very minimal injuries, too. I mean, they did get punitive damage. They did find punitive. Very, very minimal. Right, they did. But that requires a whole other level of that, you know, it ups the ante in terms of what the jury felt against the officers. I think they just didn't get a lot of money because the girls didn't get hurt very badly. Yeah, and this seems to be a case where the police just overreacted. And there was minimal damage. But I thought what you were arguing under the McComb case was that there was limited success and that there was not a public benefit to society. And I guess what I would say in response to that is prevailing on four out of six claims isn't limited success. That's pretty significant success. And I think there's a public benefit to holding police officers liable for overreacting with physical force when two teenage girls weighing under 100 pounds are just trying to go back into a stadium to find their friend. I realize it escalated after the police, you know, grabbed them and one of the girls, I guess, hit the officer. I don't know which one that was. WR. Okay. That was the littler girl, right? She hit the officer. I think there's a public benefit in reminding officers that they don't get to beat up on teenage girls that weigh less than 100 pounds for something as minor as wanting to go find their friend after an event at a stadium. They told the officers that. That's what they claim. And I'm not going to argue. But we assume they won. You lost. I know. So the way we take the facts is not that they claim something as though it were pleading. We take it as true. I understand. I shouldn't have said they claim. That's the evidence that we're bound to go by, that that all happened. All I'm saying is the jury thought it was a close case and the judge thought it was a close case. Well, I'd like to talk about the general and the special verdict. All right. Because I think you claim and you referenced this earlier about that you can't reconcile negligence with the excessive force. Now, when I saw that right away in my mind, I went to the fact that, and I can see where the jury, you know, I mean sort of my natural, just my reaction was, well, if an officer commits excessive force, now the officer might think it's okay, but the officer intended to do what he did, you know, in terms of the officer intended to pick the girl up and move her or, you know, whereas a negligence type of thing could be, let's say, that I picked her up, but then someone slipped and then fell and hit her head and it went, you know, I didn't intend to do that. So you could say on the one hand the excessive force would be what the officer intended to do. The jury didn't agree that that was appropriate under all of the circumstances, but the officer, it wasn't something that happened by accident. It wasn't negligent. Whereas there could be other circumstances where someone really gets hurt, but the officer was trying to move them, people slipped and then they hit their head on a curb and went unconscious and had bad brain injury, but the officer wasn't, you know, or it bumped them or something like that. And so I could see where negligence could be different. So I'm not having a hard time reconciling under these facts why the jury thought what the officers did was excessive, but the officers intended to do it. It wasn't a negligent act. And negligence goes to the standards of reasonable person, whereas excessive force is a reasonable officer, and I think it's a different standard. I wouldn't agree that it's a different standard. I think it's a different standard. But one's a reasonable officer and the other's a reasonable person, right? I don't think that's a different standard. Well, no, but when you decide whether an officer used excessive force, the officer gets the benefit of what a reasonable officer would think. They don't get the benefit of what a reasonable person would think because those people don't have the training that an officer has, right? It's not just reasonable person. It's reasonable person under all the circumstances, and if the circumstances are that you're a police officer trying to do your duty, that has to be taken into account. And you can't take the position, I don't think, that the officers may have believed what they were doing was okay and the jury saw it that way even though they thought it was excessive because that would be applying a subjective standard to negligence and the standard is objective. It's a reasonable person, the hypothetical reasonable person and the hypothetical reasonable officer as the court stated it. And the standards coalesce. They're exactly the same standard. What is reasonable under this abstract objective standard? When we're talking about excessive force, we look at the factors in Graham versus Connor, and police officers are trained in that area, which gives them a specialized knowledge of when they're going beyond the bounds of what force is justified by the circumstances and when they're within it. And so that requires, I agree with Judge Callahan, that requires more of an intentional aspect of conduct by a trained person, knowledgeable in the area, a person who should be trained, whereas negligence is just the ordinary person, you or me, who doesn't behave prudently. Well, if the instructions had gotten to anywhere near that level of detail, then I'd say the jury understood it. But they didn't, and I think it's probable that the jury understood it. Why wouldn't the jury understand that concept? Because they weren't instructed in those words. Perhaps they should have been. It would have made it clearer for them. You could have submitted those instructions. We didn't know they were going to come in with this verdict that didn't make any sense. Well, you have to object before rather than after. Well, I don't think that's the law. I don't think you have to – you're required to anticipate the jury doing something irrational. I couldn't find the verdict form in the excerpts. Is it there? Did you put it there? The verdict itself is in there, and that's the form. They answered the questions the way that they were stated. Did they have a form? They did. I couldn't find the form. Is it there? I'll look. No, it's not there. We looked. It would have been helpful to have it. All right. I'm sorry for not including it. Yeah, if you're – I think that's the point. If you're going to parse whether it's a general verdict or a special verdict, that would be really – I mean, that's front and center about what you're asking the court to look at, and it should be in the excerpts. All right. I'll put that down for next time, too. Thank you, counsel. Okay. Good morning. Thank you. I'll start by discussing the attorney's fees, since that seems to be somewhat of a hot-button issue. This case, as you might imagine, a case where there's no special damages, there's no medical bills at issue. I tried a lot more complicated cases than this, charged my clients a lot less money, even correcting for the changes in fees between then and now. And maybe part of the reason is not charging them four hours to watch a 90-minute movie. I think the district judge thought he was doing a lot by cutting them in half roughly, but it looks to me as though he might have been misled because the initial number was so grossly excessively high. I don't get how you can justify the lawyers getting, what is it, 16 times what the client got or something like that? A couple of points on that. To the extent that there's a sense that that might have been excessive. I have no trouble with the private attorney general theory. You get two, three, maybe four times what your client got. But even four times is pushing it. But what took so many hours? Because he did substantially cut your hours. But what was it about this case that took such intense effort? First, Your Honor, I think that the amount of time spent was quite reasonable. But it's a case, again, it's a case involving two. Give me conclusions. Give me facts. So, you know, how many depositions did you have to take? Was it difficult to get the depositions scheduled? Did you have to go into court to get documents produced? And what was happening? Absolutely. Let me describe all of these efforts for you. First, we have two plaintiffs and four defendants, okay? We have written discovery as to all of those parties. We have depositions as to all of those parties. How many? It's in the records, but we had the depositions of both plaintiffs. I believe they're mother. That's three. We had depositions of all of the involved officers. It would be seven to eight, something along those lines. The other issue with the case, as you may have noticed, this incident occurred in front of a crowd. And by the time we got to trial, we had two witnesses who were willing to come forward and say, or three witnesses who were willing to come forward and say, yeah, I saw what happened and these are the facts. Okay. Roughly ten depots. Yes. And no depositions of the crowd, but found a couple of crowd witnesses. Well, that's a major effort, Your Honor, because there's. . . I'm not suggesting it isn't. Okay. Okay, I just don't want to. . . Are you suggesting by that comment that people, you couldn't get people to testify? Two reasons for that, Your Honor. First, I think there is a reluctance to testify in somebody else's case against the police, what's in it for you. That's number one. And number two, you're dealing with a lot of young people, and they simply are not reliable and they're very difficult to track down. People move out of the area, they change their cell phone numbers, they only know each other by their first name or oftentimes a nickname. We had one person who came to the court who we only knew by the name of Homie. That was his only name. By the time we got to court, we understood his name was Stephen Haley, but it's not the easiest job in the world. So I don't want that. . . There's a lot of homies out there. Exactly. Thank you, Your Honor. What was the. . . Did you have a big struggle? You notice up a deposition, they send you some kind of assertion of privilege, you have to do a motion to compel, that sort of thing, or were you able to work out the depositions privately? We were able to work out the depositions privately. There was one motion about adding in an officer late in the case. We had to do a motion on that. What about the written discovery? Did they just send you a big refusal and a lot of excuses, or did you, when you asked them for the names and whatever contact information you needed on the potential deponents, did they give it to you? Well, it's interesting you mention that, Your Honor. We propounded our discovery, and we discovered at trial there were, in fact, material things that were simply just omitted from their discovery responses, so the discovery was less than faithful. I was asking about something a little different. What I was asking about was how much you had to fight in court to get discovery that you were plainly entitled to. Not at all. To me, the real issue is, and we have it in our declaration. On the documents, was this a six inches of documents or a banker's box of documents or an eight banker's boxes of documents or a whole room full of banker's boxes kind of case? Definitely more towards the front end of your list. It was a good notebook size. I mean, the police report was probably three pages, I bet. The police report was probably, let's call it, ten pages. So we're looking at no more than half a banker's box of documents. I would agree with that. What's the standard of review for the award of attorney's fees? Abuse of discretion. In that regard, I just want to touch on one thing very briefly. This is a case where there's no economic damages. The only thing that the plaintiffs had was a feeling that they were victimized. We have declarations in support of our fee motion from other attorneys who would say they'd never touch a case like this, and most people wouldn't. And we did consistent with the aims of the Civil Rights Act for one reason. So the next time officers come across law-abiding citizens, they treat them with a little bit more respect than they treated them in this instance. That was the sole thing that we saw. As was discussed earlier, we did not ask for an amount. Well, some lawyers don't. Certainly if you do business litigation, you don't. The lawyer just before you, the Yackman firm, has been doing it for years. Some do. I would be impressed if they would have taken this case. But you're right, maybe they would have. But most people, I think, we can agree are not going to take a case like this where your sole goal is to simply make the officers think twice the next time they act, to the extent that there's some notion that the attorney's fees are excessive. First, that's in the district judge's discretion. But the second is it's entirely within the defendant's ability to limit my attorney's fees in the case. Exceptionally simple. That's why I asked the defendant so much about how much they spent, and I asked you how much you had to fight in court to get the discovery you're entitled to. And those are all good questions. There's another, and I won't go back over that. There's another tool that they have, which is a Rule 68 offer. They make a Rule 68 offer to me, and my attorney's fees are cut off. How much did you have to fight in court? How long was the trial, and how many other battles did you have, motion hearings and whatnot, roughly? Sure. The trial was six days. And we had, other than motions and lemonade, the only motion that we had, we had a 12B motion when we sought to add in a new party. How long did the jury deliberate? Jury, I believe they deliberated. I could be wrong, and I would defer to the transcript. My recollection was that it was about a day. But by, the problem is, is that you just can't afford to take a case where you're doing it for principle. If you're going to go through the whole case with the other side turning their nose up at you. I have no problem with that proposition. You are clearly correct, and the law establishes that you are correct. It's just a how much question. Okay. Well, to the extent that it's how much, I'll just leave it at this. It's the district court's discretion. To the extent that there's some implication that what was done was actually not done, that's quite simply false. That's what we did. If you think that it took us too long, that's an entirely different question, which the district court analyzed. But the district court mentioned an experience. I don't know how long you and your co-counsel have been out of law school or any of that. I think it's in the record. So it could take you longer for that reason. Of course. Of course. And our fees reflect that. Those are the major issues that I would like to address. I think with respect to the district attorney that was discussed earlier, the only point on that that I'd really like to make is ---- That was a cheap shot. It wasn't intended that way, if that's your conclusion on it. But ultimately, that was ---- Well, I would like to think I would have anticipated that in limine and had you nailed before you tried it. But I've seen those type of cheap shots on either side. And you haven't really proposed any real authority for the proposition that it should have been admitted. And this is why I want to discuss that. Ultimately, that's the judge's discretion on that issue. So I don't want to ---- I haven't found the authority saying that it should or it shouldn't. Was there a request for a limine instruction after that or a request that the testimony be stricken? Neither, Your Honor. The record will state that, but neither, Your Honor. And it wasn't ---- it was not a subject that we dwelled on in the trial. I mean, ultimately, I don't think it was any more memorable than a sneeze because it was two questions and it was over. So to the extent that ---- Do you argue it in your argument? Absolutely not. Absolutely not. If you're going to do a cheap shot, at least you didn't argue it in your argument, because then that makes a much better argument for why it was harm ---- would be prejudicial error. I ---- okay. But on the other hand, I mean, I think Judge Kleinfeld pointed out they were arrested. Exactly, Your Honor. And so, I mean, what's the jury thinking? They were arrested. What happened next? I don't know. I think some judges let it in. Some judges don't. And that's my ---- the point that I would ---- I was trying to make. The other point is, obviously, WR was found not to have been falsely arrested. So the jury clearly was not blindly led by this evidence into some conclusion. In fact, they probably didn't even remember that it was offered. So I would ask with that said, thank you, Your Honor. Thank you, counsel. J.R. v. City of San Bernardino is submitted. Here we're at Troskauer Rose v. Blick Street Records.
judges: Kleinfeld, Wardlaw, Callahan